## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

MERCE BAROCIO,          )
                             )
          Petitioner,     )
                             )
v.                       )     Case No.  CIV-05-1259-HE
                             )
JUSTIN JONES,         )
                             )
          Respondent.   )

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing *pro se*, filed this action seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241 [Doc. # 1].  Respondent has filed a Response [Doc. #15], and Petitioner has filed a reply [Doc. #20].  It is recommended that the Petition be denied.

## Petitioner's Claim

Petitioner is an inmate in the custody of the Oklahoma Department of Corrections (ODOC) and is currently incarcerated at Lawton Correctional Facility (LCF).  In this action Petitioner challenges the execution of his sentence, claiming that prison officials arbitrarily reduced his earned credit level in violation of his federal constitutional rights to due process.

## Factual Record/ Case Background

Under Oklahoma law, an inmate in the custody of the ODOC is assigned to one of four classification levels as determined by an adjustment review committee of the facility to which the inmate is assigned.  *See* Okla. Stat. tit. 57, § 138.  An inmate earns monthly credits

toward early release if the inmate is assigned to class levels 2, 3 or 4, but an inmate assigned to class level 1 earns no monthly credits toward early release. *Id*., § 138(A). An inmate's classification level and any changes to the level are determined in accordance with written policies developed by the ODOC.[1]

An inmate assigned to level 4 earns 44 credits per month. To be promoted to level 4, an inmate must be incarcerated for at least eight months and must "receiv[e] outstanding work evaluations and outstanding evaluations for personal hygiene and maintenance of living area, hav[e] no active class X misconducts or escape points, meet[] program participation requirements and maintain[] a good attitude and relationship with staff and other inmates." *See* Systems of Incarceration, OP-060107, ¶(I)(C)(2)(d).

While a level four prisoner, Petitioner was working at the Oklahoma Correctional Industry (OCI) garment factory. On February 9, 2005, Tom Lewis, Petitioner's job supervisor, told Petitioner to "turn in a job change because he was having trouble coming to work and staying all day." *See* Response, Exhibit 1.[2] On February 14, 2005, Petitioner's Facility Classification Committee/Unit Team ("Unit Team") completed an Intra-Facility Assignment Form. The "Assignment Action" section reflects a change in job assignment from "OCI" to "Job Pool" effective February 21, 2005. That section further reflects

---

[1]The Court takes judicial notice of the ODOC polices and procedures pertinent to the analysis of Petitioner's claim for federal habeas corpus relief. *See* Procedures & Accreditation at http://www.doc.state.ok.us/docs/policies.htm.

[2]This information is contained in a memorandum written on January 26, 2006, by Mr. Lewis to Ron Anderson, legal counsel for the ODOC, after the filing of this habeas action and nearly one year following the incident at issue.

Petitioner's classification level as "4." The comments section of the form states: "Per T. Lewis I/M fired he won't come to work." *See* Response, Exhibit 2. Two days later, on February 16, 2005, the Unit Team conducted an adjustment review and demoted Petitioner to level 1 effective February 21, 2005. *See* Response, Exhibit 2, Adjustment Review. The comments section of the Adjustment Review form states: "Demote to level 1 due to being fired from his job and refusing to go to work." *Id*.

Promotions and demotions in an inmate's class level are to be based on "the desired behavior of the inmate from all aspects of institutional life." *See* Systems of Incarceration, OP-060107, ¶(I)(D). The adjustment review committee is to consider the following areas: job performance and attendance, misconduct record, program participation, attitude/relationship to staff and other inmates, personal and living area appearance, and performance during present level. *See id*., OP-060107, ¶(I)(D)(1)-(6). *See also* Sentence Administration, OP-060211, ¶(II)(B) ("Class assignments are determined by the adjustment review committee/unit treatment team based upon the desired behavior of the inmate in all areas of institutional life: work attendance and productivity, conduct record, program participation, cooperative general behavior, and appearance of self and living area.").

The Adjustment Review form shows that on February 16, 2005, Petitioner received the following ratings[3] as to his "current patterns of behavior": (1) staff -- poor; (2) program

_____

[3]Pursuant to ODOC policies and procedures, the "scale of standards of assessing performance" include: "outstanding," "excellent," "good," "fair," and "poor." *See* Systems of Incarceration, OP-060107, ¶(I)(D)(6)(a)-(e). "Unsatisfactory participation in any one area is cause
(continued...)

3

participation -- outstanding; (3) job -- poor; (4) other inmates -- outstanding; (5) personal hygiene -- good; and (6) living area -- good. *See* Response, Ex. 2, Adjustment Review. The form further indicates that no recent job evaluations were in Petitioner's file. *See id.*[4]

On March 10, 2005, Petitioner's job supervisor, Tom Lewis, sent the following memorandum to Petitioner's Unit Manager, Clifford Bernard:

> In regard to inmate Merce Barocio #246067: It has come to my attention that you have had Mr. Barocio dropped from a level 4 to a level 1 and also written him up for having been fired from OCI.

> Mr. Bernard this man was not written-up nor fired by OCI, therefore his level should not have been dropped nor any sanctions levied against him in any way.

> By mutual agreement it was determined that Mr. Barocio was not cut out for the kind of work which we do here in the OCI Garment factory, (not everyone is), and that it would therefore be best for him to put in a job change to go to another job better suited for him.

---

[3](...continued)
for a demotion in level." *Id.*, ¶(I)(D)(6). Petitioner's ratings demonstrate he was no longer eligible to remain at level 4 which, as noted, requires "outstanding" ratings in the areas of work, personal hygiene and maintenance of living areas and "good" ratings in the areas of attitude and relationships with staff and other inmates. *See id.*, ¶(I)(C)(2)(d).

[4]Job performance and attendance is to be documented by a "Monthly Inmate Evaluation Time Credit Report" and/or a case manager chronological record. *See* Systems of Incarceration, OP-060107, ¶(I)(D)(1). "In order to determine if the inmate meets the work evaluation criteria (e.g., excellent, outstanding), evaluation scores will be averaged for the past 120 days." *Id.* The record does not include any of Petitioner's Monthly Inmate Evaluation Time Credit Reports. The only documentation of Petitioner's attendance is the memorandum prepared by Tom Lewis for the ODOC's legal counsel after Petitioner had filed the instant action. *See* Response, Ex. 1. That memorandum compiles "time missed" by Petitioner during the period August 2004 through February 2005. In his Reply, Petitioner challenges the accuracy of this memorandum contending some of the "time missed" was authorized. Any factual dispute regarding the reasons for Petitioner's "time missed" is not critical to the disposition of Petitioner's claims.

*See* Petition, Ex. 1 (unnumbered) (emphasis in original).  On that same date, Clifford Barnard

sent the following memorandum to Tom Lewis:

> Sir, the unit team on house 6 was notified by Officer Trahan that inmate
> Barocio #246067 was not coming to work and this was an ongoing problem.
> Officer Trahan stated that inmate Barocio was no longer need [sic] at OCI and
> that he needed to be placed in another job.
> *Please be advised that no one on the unit team issued inmate Barocio a*
> *misconduct for being fired from his job.*  However, he was brought before the
> unit classification committee and due to his statement that he decided he did
> not like his assigned job, the unit team decided that he should be reduced to
> level 1.  This was done for several reasons, 1) inmate Barocio requested this
> job assignment 2) The unit team feels that when an inmate's supervisor
> requests the inmate be reassigned for failing to come to work, the inmate
> was fired for a work related misconduct, 3) The unit team feels that this action is
> warranted to ensure that inmate Barocio understands the importance of going
> to work when he is schedule to work.
> Inmate Barocio was reassigned to another job and if he does well in this
> position, he will be considered for a level promotion in accordance to OP
> 060107.

*See* Response, Exhibit 3 (emphasis added).

On March 11, 2005, Petitioner filed a Request to Staff seeking restoration to level 4

status.  *See* Petition, Ex. 3 (unnumbered).  On March 24, 2005, the Request to Staff was

denied for substantially the same reasons set forth in Clifford Barnard's memorandum to

Tom Lewis.  *Id*.  Although Petitioner then attempted to file a formal grievance, the grievance

was denied as untimely, as was Petitioner's attempted appeal of the denial of the formal

grievance.  *See* Petition, Exs. 4-5 (unnumbered).[5]

---

[5]Petitioner did not attempt to exhaust remedies in the state courts.  Although a prisoner
generally must exhaust state court remedies prior to bringing a federal habeas corpus action pursuant
to 28 U.S.C. § 2241, the Tenth Circuit has determined that no available state court remedy exists
(continued...)

On January 25, 2006 -- after this habeas action had been filed -- Officer Trahan provided a letter to Ron Anderson, legal counsel for the ODOC, stating: "On February 9, 2005 inmate Barocio, Merce #246067 was terminated from his OCI job by Mr. Tom Lewis for his constant tardiness, always being late for work." *See* Response, Exhibit 4. The letter further states: "Mr. Barnard [the Unit Manager] ask me if [Barocio] was fired and I said yes." *Id.*

The record contains no information as to the length of time Petitioner remained at level 1 or the timing or circumstances of any subsequent promotion above level 1. The record does reflect that Petitioner's next adjustment review following the demotion was scheduled for June 15, 2005. *See* Response, Ex. 2, Adjustment Review dated February 16, 2005, at 2.

## Analysis

Pursuant to *Sandin v. Conner*, 515 U.S. 472, 487 (1995), a prisoner is entitled to due process before being subject to disciplinary actions that "inevitably affect the duration of his sentence."[6] Petitioner contends the demotion from level 4 to level 1 was automatic and

---

[5](...continued)
under Oklahoma law for claims such as the one at issue here and, therefore, has excused the exhaustion requirement on futility grounds. *See Wilson v. Jones*, 430 F.3d 1113, 1118 (10th Cir. 2005) (*citing Gamble v. Calbone*, 375 F.3d 1021, 1026 (10th Cir. 2004)). Respondent concedes that Petitioner need not exhaust state court remedies. *See* Response at 2, ¶ 4 and footnote 1.

[6]In *Sandin*, the Supreme Court also recognized that a prisoner may be deprived of a liberty interest based on a severe change in the conditions of his confinement which imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483. Petitioner brings this action pursuant to 28 U.S.C. § 2241 which provides for relief when the challenged state action affects the duration of a prisoner's custody. Therefore, the proper
(continued...)

mandatory under governing ODOC regulations. Petitioner claims, therefore, that the demotion from level 4 to level 1 inevitably affects the duration of his sentence and, therefore, he had a liberty interest in his level 4 classification. Petitioner further claims that he was demoted without the protections of procedural due process. *See Superintendent, Massachusetts Correctional Institution at Walpole v. Hill*, 472 U.S. 445, 454 (1985) (due process protections available to prisoners alleging deprivation of liberty interest include: (a) advance written notice of the charges; (b) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; (c) a written statement by the factfinder of the evidence relied upon and the reasons for the disciplinary action; and (d) "some evidence" to support the decision).

Respondent disputes that Petitioner has a liberty interest in maintaining his classification level. Respondent contends that Petitioner's classification level is a discretionary determination governed by numerous factors including his "satisfactory participation in work at the standard required for a particular class level." *See* Response at

---

[6](...continued)
application of *Sandin* in this case requires analysis of whether the challenged state action would inevitably affect the duration of Petitioner's sentence.

5 *citing* Okla. Stat. tit. 57, § 138(B)-(D).[7]   Respondent asserts that Petitioner's unit

classification committee met with him on February 16, 2005, and determined that Petitioner

had not been going to work as required.   According to Respondent "[t]his was determined

by the committee to be unsatisfactory work performance at the level he was then assigned

(Level 4), and he was reassigned to Level 1."   *See* Response at 6.   Respondent contends

"[t]his was a discretionary determination of the classification committee under § 138."   *Id.*

Respondent maintains that "no disciplinary action was taken" against Petitioner.   *See*

Response at 7.

Instructive towards resolution of Petitioner's claim is the Tenth Circuit's recent

decision in *Wilson v. Jones*, 430 F.3d 1113 (10th Cir. 2005), a case cited by both parties in

urging their respective positions.   In *Wilson*, an Oklahoma prisoner was found guilty of a

---

[7]Specifically, section 138(D)(3) provides:

In addition to the criteria established for each class in paragraph 1 of this subsection, the following requirements shall apply to each of levels 2 through 4:

a. satisfactory participation in the work, education, or program assignment at the standard required for the particular class level;

b. maintenance of a clean and orderly living area and personal hygiene at the standard required for the particular class level;

c. cooperative behavior toward facility staff and other inmates;

d. satisfactory participation in the requirements of the previous class level.

Okla. Stat. tit. 57, § 138(D)(3).

Class X misconduct and was demoted from level 4 where he was earning 44 credits per month to level 1 where he earned zero credits per month. The Tenth Circuit held the misconduct conviction infringed upon a liberty interest because "it reduced [the prisoner's] credit earning class in a manner that 'inevitably affect[ed] the duration of his sentence.'" *Wilson*, 430 F.3d at 1120 *quoting Sandin*, 515 U.S. at 487. Compelling this conclusion was the fact that under governing ODOC policy, the misconduct conviction required a mandatory and automatic demotion from level 4 to level 1. *Id*. at 1115, 1120-1121. In addition, as a result of the misconduct conviction the prisoner was ineligible for promotion beyond level 2, where he could earn only 22 credits per month, for a period of two years. *Id*.

Petitioner relies on one of the ODOC policies at issue in *Wilson* to support his claim for relief, Systems of Incarceration, OP-060107, ¶ (I)(C)(2)(a).[8] Pursuant to that policy, an inmate's assignment to level 1 is mandatory upon a number of circumstances. In addition to a conviction for misconduct, which served as the basis for the mandatory class level demotion in *Wilson*, *see* OP-060107, ¶(I)(C)(2)(a)(5), the policy also identifies the following circumstance as requiring mandatory assignment to level one: "[u]pon removal from a job . . . assignment due to nonperformance or misconduct related to the job. . . ." *See* OP-060107, ¶(I)(C)(2)(a)(3). The conduct leading to demotion pursuant to this policy provision

---

[8]Respondent has wholly failed to address the ODOC policies and procedures, analysis of which is critical to resolution of Petitioner's claim.

will be documented by an offense report in accordance with the ODOC policy entitled "Department Inmate Disciplinary Procedures."  *See id.*[9]

Significantly, however, under this same policy an assignment to level 1 may also be made by the inmate's classification committee upon consideration of discretionary factors. *See* OP-060107, ¶(I)(C)(2)(a) ("Inmates may be assigned to Level 1 whenever deemed appropriate by the facility/unit classification committee.").  Only the classification committee may demote a prisoner without an accompanying offense report.  *See* OP-060107, ¶(I)(C)(2)(a)(3) ("Assignment to Level 1 in lieu of an offense report can only be done by the facility classification committee.").  Here, the record unequivocally shows that in lieu of an offense report Petitioner's Unit Team/classification committee met and exercised its discretion when making the decision to demote Petitioner to level 1.  The Unit Team did consider Petitioner's attitude toward his assigned work and his failure to come to work when rendering its decision to demote Petitioner.  *See* Response, Ex. 3, Memorandum from Clifford Barnard, Unit Manager ("[Inmate Barocio] was brought before the unit classification committee and due to his statement that he decided he did not like his assigned job, the unit team decided that he should be reduced to level 1.  This was done for several reasons, 1) inmate Barocio requested this job assignment 2) The unit team feels that when an inmate's supervisor requests the inmate be reassigned for failing to come to work, the inmate was fired

---

[9]For purposes of a misconduct offense, ODOC's policies and procedures define "employment misconduct" as: "Quitting job without prior approval; getting fired for misconduct on job, tardiness, or shirking of duties; failure to notify staff/employer when too ill to work."  *See* Department Inmate Disciplinary Procedures, OP-060125, Attachment A, Acts Constituting Rule Violation, 02-4.

for a work related misconduct. . . ."). And, the Unit Team also considered additional factors when determining Petitioner's class level assignment. *See* Response, Exhibit 2, Adjustment Review Form, "Current Patterns of Behavior," (1) staff -- poor; (2) program participation -- outstanding; (3) job -- poor; (4) other inmates -- outstanding; (5) personal hygiene -- good; and (6) living area -- good. Thus, the circumstances surrounding Petitioner's demotion are unlike the circumstances present in *Wilson*. *See Wilson*, 430 F.3d at 1121 ("In Mr. Wilson's case, the only consideration in his demotion and prevention from promotion was the misconduct conviction. These effects were not the result of prison officials' discretion after they considered a number of factors; rather they occurred solely, automatically, and mandatorily because of the misconduct conviction.").

In contrast, no offense report or misconduct charge was brought against Petitioner for nonperformance or misconduct related to his job or for any other reason, and there was, of course, no misconduct conviction. *See* Response, Ex. 3 ("Please be advised that no one on the unit team issued inmate Barocio a misconduct for being fired from his job."). *See also* Petition, Ex. 1(unnumbered) ("Mr. Bernard this man was not written-up nor fired by OCI . . . ." (emphasis in original)). Accordingly, the demotion of Petitioner to level 1 was not "mandatory and automatic" under the governing ODOC policies and procedures. Nor does the record demonstrate that Petitioner was ineligible for promotion to a higher classification level for a significant, pre-determined period of time like the mandatory two-year period applicable in *Wilson*. *See id*. at 1116 ("Regardless of whether Mr. Wilson continued to meet the statutory criteria for promotion to levels three or four, the Class X conviction caused Mr.

Wilson to become ineligible for promotion beyond class level two for a period of two years.") (citations omitted).[10]   Without showing something more than an attenuated connection between the demotion at issue here and the duration of Petitioner's sentence, Petitioner cannot demonstrate a liberty interest in remaining at class level 4.  Therefore, unlike the petitioner in *Wilson*, Petitioner fails to demonstrate that the circumstances of his demotion constituted a disciplinary action that would inevitably affect the duration of his sentence.  And in accordance with long-established Tenth Circuit precedent, the mere loss of opportunity to earn credits did not deprive Petitioner of a constitutional right.  *See Twyman v. Crisp*, 584 F.2d 352, 356 (10th Cir. 1978).  Accordingly, Petitioner's demotion to level 1 did not implicate his federal due process rights and Petitioner's request for habeas corpus relief should be denied.

**Pending Motion**

Petitioner filed a Motion to Supplement [Doc. #17] on February 10, 2006.  Petitioner includes in the motion his personal statements that he intends the Court to construe as his affidavit.  The allegations contained in the affidavit charge prison officials with retaliatory actions towards persons who may serve as potential witnesses in Petitioner's case.  Petitioner's Motion to Supplement should be granted, but only to the extent that he intends the affidavit to support his request for habeas corpus relief pursuant to 28 U.S.C. § 2241.  The Court has considered the information contained in Petitioner's Motion for those purposes

---

[10]If anything, the record suggests that Petitioner could be promoted relatively quickly in the discretion of the classification committee.  *See* Response, Ex. 3, Mr. Barnard's March 10, 2005 memo to Tom Lewis ("Inmate Barocio was reassigned to another job and if he does well in this position, he will be considered for a level promotion in accordance to OP 060107.").

only.  The Motion to Supplement should be denied for any other purpose or as support for any additional claims for relief.

## RECOMMENDATION

It is recommended that the Petition for Writ of Habeas Corpus [Doc. #1] be denied. It is further recommended that Petitioner's Motion to Supplement [Doc. #17] be granted but only to the extent the information contained therein has been considered by the Court in reviewing Petitioner's request for habeas corpus relief pursuant to 28 U.S.C. § 2241.  The Motion to Supplement should be denied for any other purpose or as support for any additional claims for relief.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636.  Any objections must be filed with the Clerk of the District Court by June __20th__, 2006.  *See* Local Civil Rule 72.1.  Failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein.  *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred by the District Judge in this matter and terminates the referral.

DATED this __31st__ day of May, 2006.

VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE